## Fein et al. v. James

*Louis Shaffer*, for plaintiffs.
*William A. Valentine*, for defendant.

FLANNERY, J., for court en banc, July 16, 1947.—Plaintiffs, on December 17, 1945, purchased from defendant buildings upon land of a third party and received therefor a bill of sale containing a general warranty as to the title of the said buildings. Subsequently it developed that the taxes for the years 1942 to 1945, inclusive, in the sum of $342.36, were unpaid and were liens against the buildings, to discharge which plaintiffs were compelled to pay. They now bring this action for that amount, together with interest against defendant, the former owner, from whom they purchased the property, who defends on the proposition that he is

not liable generally, and specifically that he could not be responsible before April of 1942 or after December of 1945, or the time of his ownership.

It is conceded that although technically the buildings in question are personal property yet they are assessed as real estate and that for the purpose of taxation all buildings and other structures affixed to the land, even though they are removable, partake of the attributes of real estate: 51 Am. Jur., Taxation, §416.

Inquiring further, we find no Pennsylvania case classifying contracts to sell a standing building as such. As to the sale of standing timber, it is the law that the intention of the parties determines whether the sale of realty or of personalty was accomplished. Havens et al. v. Pearson, 334 Pa. 570.

The intention referred to concerned itself largely with the severance of the object sold. If it was considered as severed from the land in the contemplation of the parties, then the sale would be that of personalty, otherwise realty. This seems to be in general accord with the Sales Act, as construed by Williston. See I Williston on Sales (1924 ed.) §62. And for the sale of buildings specifically see Williston, supra, §66. To the same effect see 50 C. J., Property, §44.

The Sales Act of May 19, 1915, P. L. 543, 69 PS §337, defining goods, adds:

"The term includes emblements, industrial growing crops, *and things attached to or forming part of the land which are agreed to be severed before sale or under the contract of sale.*" (Italics supplied.)

The application of this section is negative but it indicates the purpose of the legislature to exclude from the arbitrary definition property such as that under consideration which, by necessary implication, is to be real or personal according to the intention of the parties.

The Federal courts of Pennsylvania have discussed the principles involved in the sale of a building at the time affixed to the land but which was to be shortly removed. Cleveland Wrecking Co. of Cincinnati v. Federal Deposit Ins. Corp., 66 F. Supp. 921. There taxes assessed against the land were incidentally a lien upon the building. Some remained and the buyer sued.

The Federal court for the eastern district of Pennsylvania, in August 1946, held that the sale of a house, the severance and the removal of which was contemplated by the parties, was a sale of personalty and came within the purview of the Sales Act. The warranty as to the taxes was regarded as binding upon the seller but it was relieved of liability on other grounds not necessary to this discussion. The decision depended on the intention of removal, which was the purpose of the sale.

The court proceeded on the same general principles governing standing timber. It regarded the situation in such cases as analogous to that before it, a situation similar to that which is before us now. But in the instant case it appears to be agreed that the buildings were not to be removed and as we understood the discussion at the time of argument, they are still standing. They are an integral part of the realty, used as such in connection with and in conjunction with the land, and are to continue so.

We can come to no other conclusion but that their immediate severance was not contemplated; that they were not sold for their constituent parts, that is, for the lumber and the hardware, etc., but were sold as structures, bought as such and within the contemplation of the parties to remain and be used as such for an indefinite period.

Under all the circumstances, therefore, we can only conclude, as indicated in the authorities cited above, that the buildings, the subject of the sale, have for the

purposes of this discussion all the attributes of real estate.

It, therefore, follows that the covenant or warranty would protect the plaintiffs against encumbrances, which are defined to be of two kinds:

1. Such as affect the title;

2. Such as affect the physical condition of the property.

In Lafferty et ux. v. Milligan, 165 Pa. 534, the definition as formulated in Rawle on Covenants, §94, was adopted and an encumbrance was said to be:

" '. . . every right or interest in the land which may subsist in third persons to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance.' "

It is not denied that taxes paid by plaintiffs were regularly assessed or that they were returned as liens against the property and that the liens were filed of record. Under such circumstances the owner then became bound to discharge them to save the property from a tax sale. And when plaintiffs were compelled to pay to relieve the property, their right of action was complete for the injury sustained: Taylor v. Allen, 60 Pa. Superior Ct. 503.

It was long ago decided that:

"When the mortgagor is in possession, and neglects to pay taxes which are a lien on the land, the mortgagee may pay them not only in reliance on the personal liability of the owner, but in reliance that the land is liable, and the lien will be deemed as transferred by the State to him in favor of the mortgage-debt . . .": Hogg v. Longstreth, 97 Pa. 255, 259.

We believe that the logic of that principle applies with equal force to a purchaser under a warranty. As was said in Fell v. Johnston et ux., 154 Pa. Superior Ct. 470, 472:

". . . When plaintiff paid the taxes to protect his title on purchase of the land, he had a right of action for recoupment against the defendants who were owners of the property when the taxes were assessed. It is said that this right of action at law follows from 'an application of the principle that he who is compelled to pay another's debt, because of his omission to do so, may recover (in his own name) on the ground that the law infers that the debtor requested such payment'. . . ."

And more recently our Supreme Court has quoted, with approval confirming this principle, that:

"Where one is compelled to pay the taxes to relieve himself from liability and protect his own interest, assumpsit will lie to recover from one who should have made payment at the instance of the party paying. . . .": Lehigh Valley Coal Co. v. Coxe Brothers & Co., Inc., 327 Pa. 23, 30.

And in Pennsylvania Co., etc., v. Bergson, 307 Pa. 44, 49, Mr. Justice Kephart, speaking for the Supreme Court, held:

"It is clear from the principles in these cases and the legislative declarations that the owner of land is and should be personally liable for taxes assessed while he is the owner of the property. . . ."

The court then went on to the conclusion that (p. 55):

"If, . . . a third party, . . . is required to pay taxes, such party steps into the shoes of the municipality, and is subrogated to its rights, which, of course, includes the right to proceed against the record title holder."

Demurrer sustained and it is directed that judgment be entered for plaintiffs and against defendant for the taxes on the property in question from April 1942 to December 17, 1945, the duration of his ownership and the only taxes for which he would be liable.